S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**HANNAH HORSLEY, CASB # 220436**
Assistant United States Attorney
Hannah.Horsley@usdoj.gov
1000 S.W. Third Ave., Suite 600
Portland, OR   97204-2902
Telephone:   (503) 727-1000
Facsimile:   (503) 717-1117
      Attorneys for United States of America

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:14-CR-00034-MO |
| v. | GOVERNMENT'S SENTENCING MEMORANDUM |
| **STEVEN GLENN HUFFMAN, JR.,** | |
| Defendant. | Sentencing: February 23, 2015 |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, through Hannah Horsley, Assistant United States Attorney, respectfully submits this sentencing memorandum for the Court's consideration.   The government respectfully recommends that the Court sentence defendant to 33 months in custody, three years of supervised release, and a $39,300 fine.

## I.     FACTUAL BACKGROUND

Defendant is a prolific pimp, who had 15 women working for him over a seven year time period.   PSR ¶¶15, 17.   He prides himself on having introduced at least two women to prostitution, and to luring prostitutes away from other pimps to work for him.   PSR

¶¶17, 18.  Defendant had the women who engaged in commercial sex for him travel extensively, and he was impressed with the amount of money they could make when they travelled to other cities.  PSR ¶¶17-19.  Since 2008, defendant and/or the women associated with him received 140 wire transfers totaling $39,300.  PSR ¶30.

### Offense Conduct and Admitted Relevant Conduct

On November 5, 2014, defendant Steven Huffman pleaded guilty to traveling from Oregon to Hawaii on March 27, 2013 with the intent to facilitate unlawful activity – which was prostitution – in violation of 18 U.S.C. § 1952(a)(3) (the "Travel Act").  The offense of conviction involved one trip with one victim, but defendant admitted to relevant conduct over a five year time period involving multiple victims.

In the plea agreement, defendant admitted that "in furtherance of his business enterprise, he traveled in interstate commerce from 2008 through 2013 in the District of Oregon and elsewhere and facilitated the unlawful activities of D.M., J.M., and A.M.  CR 45 at ¶5.  He also agreed that a two-level enhancement applied because he had multiple victims, he agreed to pay restitution to those victims, and he acknowledged that the government would seek a fine in the amount of the wire transfers that those victims had sent to him over the five-year time period, which reflected the documented financial gains he had received as their pimp.  PSR ¶¶6, 7.

### Force and Coercion

Defendant prided himself on being a finesse pimp who's "girls" called him "daddy" and paid him as much as $8,000 to "join his team."  PSR ¶18.  But at least one victim,

**GOVERNMENT'S SENTENCING MEMORANDUM**                                        **PAGE 2**

who was brave enough to leave him and report him to the police, was the victim of force, threats and coercion. PSR ¶¶21-24. A.M. revealed that she met defendant in 2008 when she was desperate for money. While she was under the influence of ecstasy at a party, defendant explained "the game" to her, and told her that she would make a lot of money having sex with men and that he would take care of her. Notably, defendant has a tattoo that says "game" on his forearm. PSR ¶66. Another victim, who is the victim charged in the offense of conviction, explained the rules of "the game" to her. She worked for defendant for approximately six months, during which she lived in his house and all of the money she made went to him. She was only given a small allowance to pay for cosmetics, condoms and toiletries. PSR ¶24. She could not talk back to him, or question him. PSR ¶21.

This victim was robbed twice during the six months she worked for defendant, and he blamed her both times. PSR ¶24. On one occasion, she was robbed of approximately $500 by a john/customer and defendant yelled at her for losing the money and blamed her for it. PSR ¶22. At his residence afterwards, defendant put a firearm to her head, stating that it was his money and she had to get it back. PSR ¶22. He also "smacked" her in the face and pushed her around. PSR ¶22. She was scared for her life and called her mother to borrow the money. PSR ¶22. On another occasion, defendant left her stranded in another city after her flight was cancelled and she had already wired the $4000 she made that day doing commercial sex acts to the defendant. PSR ¶23.

**Pretrial Release Violations and Revocation**

Defendant defied pretrial supervision and violated the conditions of supervision multiple times by using an unauthorized cellular telephone, having contact with known prostitutes, unauthorized travel, unauthorized contact with a victim, using drugs and alcohol, and using of the internet to contact young women through social media sites. PSR ¶ 12.  Despite repeated admonitions and second chances, he continued to violate his conditions and deny the violations, and his pretrial release was eventually revoked.  CR 52, 55.

## II.    OBJECTION TO ADVISORY GUIDELINE CALCULATION

The Presentence Report calculates the advisory sentencing guidelines range as 15 to 21 months, based in part on an agreed base offense level of 14, and an agreed 2-level enhancement because the offense involved more than one victim.   The government agrees that this is the appropriate base offense level, and that the multiple-victim enhancement applies because defendant had 15 victims working for him over a seven-year time period. PSR ¶¶ 6, 17, 19, 24, 30, 37.

The government has one objection to the guideline calculation that it agreed to make directly to the Court because of the short amount of time between completion of the draft presentence report and sentencing.  *See* PRS Addendum.   The Presentence Report fails to include a four-level enhancement for coercion based on relevant conduct in which defendant held a gun to one of the victim's head, smacked her in the face and pushed her around after she was robbed by a john/customer.   Under the terms of the plea agreement,

the government agreed not to charge the defendant with this conduct, which would have required at 15-year mandatory minimum sentence, and to instead seek a four-level enhancement under U.S.S.G. § 2G1.1(b)(1) to hold the defendant responsible for this conduct. PSR ¶¶ 5, 6. The probation office did not apply the enhancement due to the lack of temporal proximity between the reported threats in 2008 and the offense of conviction in March 2013. PSR ¶36. If the Court concludes that the enhancement does apply, the advisory guideline range would be 27 to 33 months.

"The government bears the burden of proving, by a preponderance of the evidence, the facts necessary to enhance a defendant's offense level under the Guidelines." *United States v. Burnett*, 16 F.3d 358, 361 (9th Cir. 1994). Here, there is ample evidence that defendant engaged in coercive and forceful conduct by holding a gun to one victim's head and assaulting her. PSR ¶¶21-24. Based on these facts, the four-level enhancement for coercion should apply. *See* U.S.S.G. § 2G1.1(b)(1), and comment n.2 ("coercion" includes any form of conduct that negates the voluntariness of the victim). The only real question is whether it qualifies as relevant conduct under U.S.S.G. § 1B1.3(a)(2) because it is part of the same course of conduct as the offense of conviction, even though it occurred five years before the offense of conviction.

In assessing whether the 2008 assault and coercion is relevant conduct pursuant to § 1B1.3, the Court should analyze the similarity, regularity, and temporal proximity of the defendant's conduct. *See United States v. Hahn*, 960 F.2d 903, 910 (9th Cir. 1992); § 1B1.3 comment. n.9(B). "It is for the district court to determine in the first instance

whether these components exist in proper amounts and proportions to support a finding that certain extraneous conduct is nevertheless relevant for sentencing purposes." *Id.* (internal quotations omitted). There is no precise recipe or ratio, but when one component is absent, at least one of the other components must be stronger.  If the alleged relevant conduct is "relatively remote to the offense of conviction, a stronger showing of similarity or regularity is necessary to compensate for the absence of the third component." *Id.* "In looking beyond the offense of conviction, a district court must consider whether specific similarities exist between the offense of conviction and the temporally remote conduct alleged to be relevant under Guidelines section 1B1.3(a)(2)." *Id.* at 910-11.

Here the defendant's conduct in 2008 is part of the same course of conduct that he was convicted of in 2013.  He was a career pimp throughout that time period, and engaged in similar conduct with regularity.  He had multiple young women working for him, including D.M. who is the victim for the offense of conviction, and A.M. who is the victim of the relevant conduct.  Defendant admitted in the plea agreement that "in furtherance of his business enterprise, he traveled in interstate commerce from 2008 through 2013 in the District of Oregon and elsewhere and facilitated the unlawful activities of D.M., J.M., and A.M.  He acknowledged that both D.M. and A.M. were victims and agreed to pay restitution to them, and he understood that the government would seek a fine in the amount of the wire transfers that those victims and others had sent to him over the five-year time period, which reflected the documented financial gains he had received as their pimp. PSR ¶¶6, 7.  Based on this pattern of conduct, the similarity and regularity of the events

outweigh the lack of temporal proximity, and the 2008 conduct should be considered in calculating the guideline range and fashioning a reasonable sentence. Five years between the offense of conviction and the relevant conduct is not too much where there is a pattern that is repeated numerous times. *See United States v. Sheehan*, 2009 WL 3615001 at *3-4 (D. Mont. 2009) (relevant conduct spanned from 2000-2005 although defendant convicted of one count of transportation of a minor with intent to engage in criminal sexual activity in 2002).

### III.   GOVERNMENT'S SENTENCING RECOMMENDATION

While not bound by the Sentencing Guidelines, district courts must consult the Guidelines and take them into account when sentencing. *United States v. Booker,* 543 U.S. 220, 125 S. Ct. 738, 767 (2005). The sentencing guidelines are advisory and one of the statutory factors this Court must consider when imposing a sentence. *See* 18 U.S.C. §3553(a)(4); *United States v. Rita*, 551 U.S. 338, 347-48 (2007). They serve as "the starting point and the initial benchmark" in every sentencing proceeding, *Gall v. United States*, 552 U.S. 38, 49 (2007), and "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Rita*, 551 U.S. at 350. The guidelines serve as a "lodestar" at sentencing, and "cabin" or "anchor" a sentencing court's discretion. *Peugh v. United States*, 133 S. Ct. 2072 (2013). While advisory, the Supreme Court has observed that, "[c]ommon sense indicates that in general, this system will steer district courts to more within-guidelines sentences." *Id*.

The remaining statutory factors include the defendant's history and characteristics,

the nature and seriousness of the offense, the need to provide just punishment and adequate deterrence, the need to promote respect for the law, and the need to protect the public from further crimes committed by the defendant. 18 U.S.C. §§ 3553(a)(1)-(2). They also include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), and, where applicable, the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(7); *see also Rita*, 551 U.S. at 347-48 (enumerating the statutory sentencing factors); *Gall*, 552 U.S. at 50, n.6 (same).

In *United States v. Carty*, 520 F.3d 984 (9th Cir. 2008), the Ninth Circuit, sitting *en banc*, summarized the procedures a sentencing court must follow. The court must first correctly determine the applicable guideline range. *Id*. at 991. The court must also allow the parties to "argue for a sentence they believe is appropriate," and must "consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *Id*. The court may not presume the guidelines are reasonable, and should not give them any more or any less weight than any other factor. *Id*. The court "must make an individualized determination based on the facts," and must explain its choice of sentence "sufficiently to permit meaningful appellate review." *Id*. at 991-92.

The government respectfully recommends that the Court sentence defendant to 33 months in custody, which would be the high-end of the correct advisory guideline range (27-33 months), followed by a three-year term of supervised release. This is a reasonable sentence, which reflects the seriousness of the offense and the force and coercion he used

in connection with at least one victim. Under the terms of the plea agreement, the government agreed not to charge the defendant with that coercive conduct, which would have required a 15-year mandatory minimum sentence, but defendant should not escape responsibility for his horrendous acts. Defendant was a career pimp, who made a living by recruiting and transporting young women to have sex with strangers in strange places. He profited from this long-term pattern of conduct, while the victims suffered the consequences. The sentence should reflect that seriousness, and deter defendant and other pimps like him from doing this again. Defendant has no excuses for his egregious conduct. He acknowledged that "comes from a good family and 'was brought up right.'" And even though his father is a juvenile probation officer, defendant's behavior on pretrial supervision reveals that he has not yet learned his lesson and there is a substantial risk that he will reoffend. A significant prison sentence should be imposed to prevent him from doing it again.

Finally, the victims are not seeking restitution,[1] but the government joins the U.S. Probation Office in requesting that a $39,300 fine be imposed. The rationale behind this recommendation is that defendant was motivated, at least in part, by a desire to make money. A financial penalty based on the amount of money he made from the commercial sex acts of the named victims would disgorge him of the money he made at the victims' expense. It would also send a powerful message to him and other pimps that could change the cost-benefit-analysis for those who think exploiting women is lucrative. A fine sends

---

[1] The government sent restitution paperwork to the victims, but no restitution requests or victim impact statements have been received to date.

**GOVERNMENT'S SENTENCING MEMORANDUM**              **PAGE 9**

a very straightforward message that your actions subject you to a monetary penalty in addition to incarceration.

Respectfully submitted this 18th day of February, 2015.

S. AMANDA MARSHALL
United States Attorney
District of Oregon

/s/ *Hannah Horsley*
HANNAH HORSLEY
Assistant United States Attorney